UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 15-61** |
| **LISA CRINEL, ET AL.** | **SECTION "E" (2)** |

## ORDER AND REASONS

Before the Court is a motion for severance pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a) and to strike Paragraph 38 from the Superseding Indictment pursuant to Rule 7.[1] The motion was filed by Defendant, Paula Jones. The Government opposes the motion. For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

This is a criminal action charging Abide Home Care Services, Inc. ("Abide"), and a number of its associates, including Paula Jones, with a scheme to defraud Medicare and other federal crimes.[2] Specifically, on March 12, 2015, a federal grand jury returned an Indictment charging Abide and certain other Defendants[3] with (1) conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349; (2) conspiracy to pay and receive illegal health care kickbacks, in violation of Title 18, United States Code, Section 371; (3) several counts of health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2; and (4) conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

---

[1] R. Doc. 551.
[2] According to the Indictment, Abide's full name is "PCAH, Inc. a/k/a Priority Care at Home d/b/a Abide Home Care Services, Inc."
[3] Named as Defendants in the initial Indictment were Lisa Crinel, Wilneisha Harrison Jakes, Henry Evans, Threasa Adderley, Michael Jones, Paula Jones, Shelton Barnes, Jonathon Nora, Cary Payton, Evelyn Odoms, Sheila Mathieu, Suprenia Washington, Erica Edwards, Zellisha Dejean, Caren Battaglia, Sheila Hopkins, Eleshia Wiliams, Verinese Sutton, Clara Aitch, and Wendy Ervin. R. Doc. 1.

A Superseding Indictment was returned by the grand jury on April 21, 2016.[4] Prior thereto, a number of Defendants pleaded guilty to crimes charged in the March 12, 2015 Indictment.[5] It is sufficient to note, for present purposes, that the Superseding Indictment is substantively identical to the March 12, 2015 Indictment, except new Defendants were added and the Defendants who pleaded guilty to crimes in the March 12, 2015 Indictment were omitted. Defendant, Paula Jones ("Paula"), a former biller for Abide, is charged only in Counts 1 and 2 of the Superseding Indictment.

Count 1 charges Paula, among others, with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.[6] The Superseding Indictment states that, beginning in or about November 1, 2008, and continuing until May of 2015, a number of Defendants, including Paula, "willfully and knowingly did combine, conspire, confederate and agree together and with each other to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare."[7] The Superseding Indictment represents that the purpose of the conspiracy was "to cause the fraudulent certifications and recertifications of medically unnecessary home health services for ineligible Medicare beneficiaries, the production of fraudulent documentation to support medically unnecessary home health services, and the submission and concealment of false and fraudulent claims to Medicare."[8] As part of the

---

[4] R. Doc. 484.
[5] When the Superseding Indictment was filed, several Defendants had pleaded guilty and, thus, were not named in the Superseding Indictment. The Superseding Indictment charges only the following Defendants with federal offenses: Henry Evans, Michael Jones, Shelton Barnes, Gregory Molden, Paula Jones, Jonathon Nora, Suprenia Washington, Erica Edwards, Zellisha Dejean, Caren Battaglia, Sheila Hopkins, Jeff Koon, Larry Taylor, and Verinese Sutton.
[6] R. Doc. 484 at 1–13.
[7] R. Doc. 484 at 9.
[8] R. Doc. 484 at 9.

alleged conspiracy, the Superseding Indictment states Abide hired Defendant, Dr. Michael Jones, as a "House Doctor" to sign Plans of Care ("POCs") for Medicare beneficiaries "who had no legitimate medical necessity for home health services."[9] Dr. Michael Jones is Paula's husband and co-defendant, and the two are former Abide co-workers.[10] According to the Superseding Indictment, Dr. Jones "required Abide to almost double the salary of his wife, Paula Jones, and to pay the salary of Larry Taylor, Michael Jones's driver/patient recruiter. The inflated salary payments to Paula Jones and the driver/patient recruiter represented Michael Jones's kickbacks for fraudulently certifying POCs for Medicare beneficiaries."[11]

The manner and means of the conspiracy charged in Count 1, according to the Government, is as follows. Abide recruiters, in one way or another, solicited individuals to refer to Abide for home health services. The recruiters then contacted Abide's office manager, Jonathon Nora, to confirm the individual was in fact a Medicare beneficiary. Once it was determined that the individual was a Medicare beneficiary, Nora "scheduled a physician visit irrespective of medical necessity or homebound status, usually with an Abide House Doctor, well knowing that the individual referred to Abide was by a marketer instead of the beneficiary's own health care professional."[12] The Superseding Indictment states that, because the House Doctors routinely and fraudulently certified ineligible Medicare beneficiaries for home health services, Abide employees were directed to "begin home health services for Medicare beneficiaries regardless of whether a physician certification, order, or face-to-face evaluation had been obtained."[13] After a House Doctor,

---

[9] R. Doc. 484 at 10.
[10] R. Doc. 484 at 8.
[11] R. Doc. 484 at 10.
[12] R. Doc. 484 at 10.
[13] R. Doc. 484 at 10.

3

such as Dr. Michael Jones, visited the beneficiary, Abide would then dispatch a registered nurse to the beneficiary's home "to complete the OASIS assessments that determined the necessary level of care required for the beneficiary and the reimbursement rate for the claims made by Abide."[14] "After OASIS assessments were completed, Case Managers at Abide generated POCs reflecting falsely created assessments," which were then given to the House Doctors to "falsely certify/recertify medically unnecessary episodes of home health."[15] After a House Doctor signed the beneficiary's POC, licensed practical nurses (LPN) working for Abide were assigned to the beneficiary. "Skilled nursing visits by the LPNs were usually made once per week," and the LPNs "routinely falsified documentation of visits to support the ongoing fraudulent billing of unnecessary home health services by Paula Jones and another biller on behalf of Abide."[16]

Count 2 charges Paula, among others, with conspiracy to pay and receive illegal health care kickbacks, in violation of Title 18, United States Code, Section 371.[17] The purpose of the conspiracy charged in Count 2, according to the Superseding Indictment, was for Paula and others to "unlawfully enrich themselves by paying and receiving illegal kickbacks and bribes, in the form of monthly payments disguised as compensation for services performed as a Medical Director or Consultant, and salary payments to Paula Jones and Larry Taylor by Abide, as instructed and required by Michael Jones, in exchange for providing false, fraudulent, and medically unsupported documentation used by Abide to submit fraudulent claims to Medicare."[18] Count 2 states, in part, that in exchange for its House Doctors, including Dr. Michael Jones, fraudulently signing home

---

[14] R. Doc. 484 at 11.
[15] R. Doc. 484 at 11.
[16] R. Doc. 484 at 11.
[17] R. Doc. 484 at 13–18.
[18] R. Doc. 484 at 15.

4

health POCs for Medicare beneficiaries so that Abide could submit false bills to Medicare, Abide "fraudulently paid and caused payments to be made to [the doctors], including Dr. Michael Jones, disguised as payments to Paula Jones and Taylor, his wife and driver/patient recruiter, respectively."[19] Also, Count 2 states elsewhere that Paula and another biller, as part of the underlying conspiracy, "fraudulently submitted billing to Medicare on behalf of Abide for medically unnecessary home health services."[20] Count 2 represents that, between May 31, 2013, and March 25, 2014, Abide paid Paula Jones bimonthly checks, the amounts of which were between "about $3,274 and $3,304."[21] According to the Superseding Indictment, "[a]pproximately $35,000 of those payments were compensation to Michael Jones for patient referrals he made to Abide disguised as a raise in Paula Jones' salary."[22]

Paula is not charged in any of Counts 3 through 30, each of which charges one or more Defendants with the substantive crime of health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2. Neither is Paula charged in Count 31, which charges only Defendant, Shelton Barnes, with obstruction of a federal audit, in violation of Title 18, United States Code, Section 1516.

On May 24, 2016, Paula filed a motion for severance pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a). First, Paula contends that, under Rule 8(b), Counts 1 and 2 are improperly joined with Counts 3 through 31. According to Paula, the facts that underlie Counts 1 and 2 differ from those supporting Counts 3 through 31, and "there is no substantial identity between the two sets of Counts."[23] Paula further argues there is

---

[19] R. Doc. 484 at 15–16.
[20] R. Doc. 484 at 16.
[21] R. Doc. 484 at 18.
[22] R. Doc. 484 at 18.
[23] R. Doc. 551-1 at 7.

5

"no identity of the participants" in Counts 1 and 2 as compared to Counts 3 through 31, which also warrants a finding that the counts were joined improperly.[24] In sum, Paula contends "the facts, evidence, and participants of the crimes charged in Counts 1 – 2 differ greatly from those relevant to the crimes charged in Counts 3 – 31."[25] According to Paula, "[w]ith such a variance between the respective sets of counts, it is apparent that the [c]ounts were improperly joined in the Indictment and should be severed."[26]

Second, Paula argues that, even if the Court concludes Counts 1 and 2 are properly joined with Counts 3 through 31, severance is warranted under Federal Rule of Criminal Procedure 14(a).[27] Paula argues under Rule 14(a) that she is entitled to severance "based on the prejudice which is certain to arise from a joint trial with her co-defendants."[28] Paula's argument is founded on her belief that she would be prejudiced by the "spillover effect" that would result if she is tried alongside her co-defendants.[29]

Paula also seeks, in the same motion, to strike Paragraph 38 from the Superseding Indictment pursuant to Rule 7 of the Federal Rules of Criminal Procedure. Paula contends the language in Paragraph 38 amounts to "surplusage" and is unduly prejudicial to her defense. Paula points out that Paragraph 38 references a "$30 million dollar" scheme to defraud Medicare, and argues her alleged role in the conspiracy is "miniscule" in comparison. Paula contends the jury is likely, if it hears reference to a "$30 million dollar" scheme, to conclude that the allegations against her are "plausible" and to convict her. For these reasons, Paula asks the Court to strike Paragraph 38.[30]

---

[24] R. Doc. 551-1 at 8.
[25] R. Doc. 551-1 at 9.
[26] R. Doc. 551-1 at 9.
[27] R. Doc. 551-1 at 9.
[28] R. Doc. 551-1 at 9.
[29] R. Doc. 551-1 at 9–11.
[30] R. Doc. 551-1 at 14–17.

**LAW AND ANALYSIS**

The Court first addresses Paula's motion for severance under Rules 8(b) and 14(a), followed by an analysis of her request that Paragraph 38 of the Superseding Indictment be stricken under Rule 7.

I.   JOINDER & SEVERANCE – RULES 8(b) & 14(a)

Insofar as Paula's motion for severance is concerned, the Court is confronted with two separate issues. First, the Court must determine whether Counts 1 and 2 are properly joined with Counts 3 through 31 under Federal Rule of Criminal Procedure 8. If so, the next question is whether joinder, even if proper, is so prejudicial as to justify severance under Rule 14. The Court addresses each question in turn, below.

   a.  *Joinder – Rule 8(b)*

When reviewing a motion to sever, the preliminary inquiry is whether joinder was proper as a matter of law under Rule 8.[31] When, as in this case, an indictment charges multiple defendants and multiple counts, Rule 8(b) governs the propriety of joinder.[32] This rule allows joinder of defendants in the same indictment if they are alleged to have participated "in the same series of acts or transactions . . . constituting an offense or offenses."[33] Whether the counts charged fulfill this "same series" requirement is determined by the facts in the indictment, which are accepted as true absent arguments of prosecutorial misconduct.[34] There is no requirement that each defendant have participated in the same act(s),[35] or each defendant be charged in the same count(s).[36]

---

[31] *See United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993).
[32] *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1998).
[33] FED. R. CRIM. P. 8(b).
[34] *See United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012); *United States v. Faulkner*, 17 F.3d 745, 758 (5th Cir. 1994). No Defendants have made arguments of prosecutorial misconduct.
[35] *McRae*, 702 F.3d at 820.
[36] FED. R. CRIM. P. 8(b).

7

Rather, Rule 8 is "flexible" and broadly construed in favor of joinder.[37] The dispositive inquiry is whether the indictment charges "a series of acts unified by some substantial identity of facts or participants."[38] This link is usually satisfied when an indictment alleges an overarching conspiracy that encompasses the substantive offenses charged.[39] "It is well settled that a charge of conspiracy initially legitimizes joinder of all defendants, as the conspiracy charge provides a 'common link' and demonstrates that the charges arise from or 'grow out of' the same acts or transactions."[40] Even separate conspiracies with different memberships are properly joined if the conspiracies are part of the same series of acts or transactions.[41]

Paula argues Counts 1 and 2 are not properly joined with Counts 3 through 31. In support, Paula contends the facts and evidence that underlie the charges against her in Counts 1 and 2 are "generally unrelated and almost entirely distinct" from the facts and evidence that support Counts 3 through 31, counts in which she is not charged. According to Paula, the Government's evidence against her on Counts 1 and 2 will "center around (1) her duties and responsibilities as a biller for Abide, (2) her experience, qualifications, and educational and professional background (for the purpose of determining the reasonableness of her salary), (3) her knowledge, if any, of the alleged acts of her co-

---

[37] *United States v. Butler*, 429 F.3d 140, 146 (5th Cir. 2005). *See also United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995) ("Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder.").
[38] *See McRae*, 702 F.3d at 821 (quoting *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. 1981)).
[39] *See United States v. Lane*, 735 F.2d 799, 805 (5th Cir. 1984) ("Proof of a common scheme is typically supplied by an overarching conspiracy from which stems each of the substantive counts."); *see also United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995); *United States v. Ellender*, 947 F.2d 748, 754 ("Joinder of defendants is particularly appropriate when conspiracy is one of the charges."); *United States v. Hundley*, No. S3-02-CR441, 2003 WL 21537774, at *2 (S.D.N.Y. July 7, 2013) ("[T]he indictment can also be read as alleging that these defendants were engaged in a broad scheme to enrich themselves and their associates by any fraudulent means required.").
[40] *United States v. Potashnik*, No. 3:07-CR-289-M, 2008 WL 5272807, at *5 (N.D. Tex. Dec. 17, 2008) (citations omitted).
[41] *See United States v. Harrelson*, 754 F.2d 1153, 1176–77 (5th Cir. 1985).

8

defendants (for the purpose of determining criminal intent), and (4) the billing practices of Abide."[42] Paula avers, however, that the Government's evidence with respect to Counts 3 through 31 is different and will "specifically address the handling and 'treatment' of certain specified and unspecified patients, most of which are completely unrelated to Paula Jones."[43] Paula also argues that joinder is improper because "[t]here is no identity of the participants in Counts 3 – 31 and Counts 1 – 2."[44] According to Paula, the "individual patients listed in Counts 3 – 31 are not identified in the health care fraud conspiracies set forth in Counts 1 – 2." Further, Paula argues, "although the identity of some of the participants may be overlapping, the extent to which the government's case in Counts 3 – 31 will involve individuals other than those identified in Counts 1 – 2 requires a finding that the counts were improperly joined."[45]

The Court disagrees with Paula and finds the joinder of Counts 1 and 2 with Counts 3 through 31 to be proper under Rule 8(b).

This case, at its core, is about a conspiracy to defraud Medicare. Count 1 charges Paula, among others, with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349. According to the Superseding Indictment, which the Court accepts as true in assessing the propriety of joinder,[46] the purpose of the conspiracy

---

[42] R. Doc. 551-1 at 7–8.
[43] R. Doc. 551-1 at 8. Specifically, Paula argues this evidence will focus on (1) the policies and procedures utilized to recruit those patients (not relevant to the charges against Paula Jones), (2) the policies and procedures for certifying certain specified and unspecified patients as eligible Medicare home health care benefi[ciaries] (the Indictment does not allege that this is a task in which Paula Jones was involved, (3) the procedures utilized by doctors and nurses at Abide for determining an appropriate plan of care (POC) for the specified individual patients (the Indictment does not allege that this is a task in which Paula Jones was involved), (4) the medical status and legitimate medical needs of certain specified and unspecified individual patients (the Indictment does not allege that this is a task in which Paula Jones was involved), (5) the propriety of the POC and medical procedures recommended for those patients (again, not a task in which Paula Jones was involved), and (6) the nature and extent of the actual medical care rendered to each patient (again, not a task in which Paula Jones was involved). R. Doc. 551-1 at 8.
[44] R. Doc. 551-1 at 8.
[45] R. Doc. 551-1 at 8–9.
[46] *See McRae*, 702 F.3d at 820; *Faulkner*, 17 F.3d at 758. There is no allegation of prosecutorial misconduct.

9

was "to cause the fraudulent certifications and recertifications of medically unnecessary home health services for ineligible Medicare beneficiaries, the production of fraudulent documentation to support medically unnecessary home health services, and the submission and concealment of false and fraudulent claims to Medicare."[47] Count 2 charges Paula, among others, with conspiracy to pay and receive illegal health care kickbacks, in violation of Title 18, United States Code, Section 371. The purpose of the conspiracy charged in Count 2, according to the Superseding Indictment, was for Paula and others to "unlawfully enrich themselves by paying and receiving illegal kickbacks and bribes, in the form of monthly payments disguised as compensation for services performed as a Medical Director or Consultant, and salary payments to Paula Jones and Larry Taylor by Abide, as instructed and required by Michael Jones, in exchange for providing false, fraudulent, and medically unsupported documentation used by Abide to submit fraudulent claims to Medicare."[48] Counts 3 through 30 charge individual acts of health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2.[49] The Superseding Indictment makes clear that Counts 3 through 30 charge substantive health care fraud violations, all of which occurred as part of the overall conspiracy to defraud Medicare.[50]

Although charged separately, the conspiracies alleged in Counts 1 and 2, and the substantive violations alleged in Counts 3 through 31, are part of a single plan or scheme: *i.e.*, the defrauding of Medicare, a federal health care benefit program. Paula worked as a biller for Abide, and the Government alleges that, as part and parcel of the conspiracies

---

[47] R. Doc. 484 at 9.
[48] R. Doc. 484 at 15.
[49] Count 31 charges only Defendant, Shelton Barnes, with obstruction of a federal audit, in violation of Title 18, United States Code, Section 1516.
[50] *See* R. Doc. 484 at 19.

10

charged in Counts 1 and 2, Paula submitted "false claims to Medicare which were based upon fraudulent certifications."[51] The Superseding Indictment makes clear that Paula played an integral part in and helped effectuate the purposes of the conspiracies charged in Counts 1 and 2, conspiracies from which the substantive violations alleged in Counts 3 through 31 arise. Although Paula is not charged with any of the substantive violations alleged in Counts 3 through 31, there is no requirement that a defendant be charged in every count, or even most of them, for joinder to be proper. "It is well settled that joinder under Rule 8(b) is proper where an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy."[52] In addition, although not charged in Counts 3 through 31, Paula is mentioned in the section of the Superseding Indictment in which the facts supporting Counts 3 through 31 are alleged.[53]

Also, the Court notes that, contrary to Paula's arguments,[54] much of the evidence that must be adduced to establish her guilt with respect to the conspiracies alleged in Counts 1 and 2 will be relevant to proving the substantive violations alleged in Counts 3 through 31. The Government argues,[55] and the Court finds it to be likely, that the evidence offered at trial will include the testimony of witnesses who have knowledge of both the overarching schemes to defraud Medicare alleged in Counts 1 and 2 and the substantive health care fraud violations alleged in Counts 3 through 31. In a similar vein, Paula's

---

[51] R. Doc. 574 at 3.
[52] *Potashnik*, 2008 WL 5272807, at *5 n.18 (internal quotation marks omitted) (citing *United States v. Elam*, 678 F.2d 1234, 1247 (5th Cir. 1982), and quoting *United States v. Phillips*, 664 F.2d 971, 1016 (5th Cir. 1981)).
[53] R. Doc. 484 at 34. *See also United States v. Jones*, 303 F.R.D. 279, 283–85 (E.D. La. 2014) ("Moreover, those not specifically charged in Count 1, *i.e.*, the non-RICO Defendants, are each referenced by name in the overt acts section of Count 1 at least once.").
[54] R. Doc. 551-1 at 8–9.
[55] R. Doc. 574 at 8–9.

argument that joinder is improper because the patients identified in Counts 3 through 31 are not listed in Counts 1 and 2 also fails. The patients listed in Counts 3 through 31 are examples of individuals for whom Paula and her co-defendants allegedly fraudulently recommended and approved home health services, which services were subsequently billed to Medicare. Stated differently, Counts 3 through 31 are concrete examples of instances in which Paula and her co-workers carried out their conspiracy to defraud Medicare. That the specific patients identified in Counts 3 through 31 may not be listed *in extenso* in Counts 1 and 2 is inapposite. Because the Government alleges a health care fraud conspiracy, perpetuated through a "culture of fraud" at Abide, it is likely the patients listed in Counts 3 through 31, if called as witnesses, will offer testimony relevant to establishing Counts 1 and 2 and Paula's innocence or guilt thereof.

With respect to the identity of the "participants," Paula concedes the participants charged in Counts 3 through 31 *may* overlap with the participants charged in Counts 1 and 2, but argues "the extent to which the government's case in Counts 3 – 31 will involve individuals other than those identified in Counts 1 – 2 requires a finding that the counts were improperly joined."[56] The Court disagrees. The participants who are charged in the conspiracies alleged in Counts 1 and 2 overlap substantially with the participants charged in Counts 3 through 31, which is sufficient to justify joinder. In fact, although Paula is not charged in Counts 3 through 31, the Defendants charged in Counts 3 through 31 are also charged, without exception, in either Count 1, Count 2, or both Counts 1 and 2.[57] The identity of the participants, as a whole, warrants joinder.[58]

---

[56] R. Doc. 551-1 at 8–9.
[57] Stated differently, each Defendant charged in any of Counts 3 through 31 is also charged in either Count 1, Count 2, or both Counts 1 and 2.
[58] *See, e.g., Jones*, 303 F.R.D. at 283–85 (finding joinder proper where each defendant is charged in some, but not all, of the counts in the indictment).

In summary, the Court concludes the Superseding Indictment charges a series of acts unified by a substantial identity of facts and participants. Counts 1 and 2 and Counts 3 through 31 comprise the same series of acts and transactions constituting the offenses charged in the Superseding Indictment. As a result, the Court finds that the counts alleged in the Superseding Indictment, and the Defendants charged in those counts, including Paula, are properly joined under Rule 8 of the Federal Rules of Criminal Procedure.

   b. *Severance – Rule 14(a)*

Having concluded that Counts 1 and 2 are properly joined with Counts 3 through 31, the Court now considers whether severance is nevertheless warranted under Rule 14. Even if joinder is proper under Rule 8, Rule 14 affords the district court broad discretion to order severance if a joint trial would result in undue prejudice.[59] A defendant seeking severance under Rule 14(a) must overcome "significant obstacles."[60] Generally, persons indicted together should be tried together,[61] especially in conspiracy cases.[62] In fact, there is a well-recognized preference in the federal system for joint trials of defendants who are indicted together,[63] and this preference particularly holds true in conspiracy cases.[64]

Neither a quantitative disparity in the evidence nor the presence of a spillover effect requires severance.[65] A carefully tailored jury instruction will normally cure any risk of prejudice.[66] To the extent limiting instructions cannot eliminate that risk, the district

---

[59] *See United States v. Welch*, 656 F.2d 1039, 1053 (5th Cir. 1981); FED. R. CRIM. P. 14.
[60] *McRae*, 702 F.3d at 821.
[61] *United States v. Rocha*, 916 F.2d 219, 227–28 (5th Cir. 1990).
[62] *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993) ("The rule, rather than the exception, is that persons indicted together should be tried together, especially in conspiracy cases.").
[63] *Zafiro v. United States*, 506 U.S. 534 (1993). *See also McRae*, 702 F.3d at 821 (quoting *Zafiro*, *supra*) ("The federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'").
[64] *United States v. Stalmaker*, 571 F.3d 428, 434 (5th Cir. 2009).
[65] *Krout*, 66 F.3d at 1430.
[66] *Zafiro*, 506 U.S. at 539.

court must consider whether any remaining prejudice outweighs the interests of judicial economy.[67] When defendants are properly joined under Rule 8, "a district court should grant a severance under Rule 14(a) only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[68]

Paula contends she is entitled to severance pursuant to Rule 14(a) "based on the prejudice which is certain to arise from a joint trial with her co-defendants."[69] According to Paula, "the spillover effect from the anticipated cumulative evidence and testimony will overwhelm the jury in its consideration of the simple issue with which it will be faced in determining a verdict on the charges against Paula Jones – more specifically, a verdict on Counts 1 and 2."[70] In support of her spillover-effect argument, Paula represents that her involvement in Counts 1 and 2 is "minimal" and is "limited to the execution of her duties as a billing supervisor for Abide and her receipt of a paycheck for the work that she performed in that capacity."[71] Paula also points to the method by which the Government alleges she received kickbacks, arguing it is different from any of her co-defendants.[72] Specifically, Paula underscores the Government's position that the kickbacks she received came in the form of an inflated salary, which was also "the vehicle through which Mr. Jones was paid his kickback."[73] Paula concedes the distinction is "discrete," but argues it is significant, "as jury confusion is likely to arise[] if Ms. Jones is tried with the other co-

---

[67] *See McRae*, 702 F.3d at 821–22.
[68] *Zafiro*, 506 U.S. at 539.
[69] R. Doc. 551-1 at 9.
[70] R. Doc. 551-1 at 11.
[71] R. Doc. 551-1 at 11.
[72] R. Doc. 551-1 at 13.
[73] R. Doc. 551-1 at 13.

14

defendants."[74] Paula also points to the Government's plan to use statistical experts to prove a "massive" health care fraud conspiracy, arguing such experts are not needed with respect to the charges against her and, in fact, would prejudice her ability to defend herself.[75]

Having considered Paula's arguments, the Court finds severance under Rule 14(a) is not warranted in this case. Any prejudice that Paula sustains from a joint trial with her co-defendants will be minimal. Paula's arguments in support of severance substantially minimize her role in the conspiracies charged in Counts 1 and 2. According to Paula, the Government's case against her is based solely on her marriage to Dr. Michael Jones, a co-defendant, and the kickbacks she allegedly received being different, and less indicative of criminal intent, than those received by other defendants. Even if true, it is well accepted that a quantitative disparity in the evidence against a particular defendant is not sufficient grounds to justify severance. Paula worked as a biller for Abide and, according to the Government, processed a number fraudulent bills and submitted them to Medicare. The Government contends the "culture of fraud" at Abide was so severe that employees, like Paula, knew or should have known that their activities were part of a conspiracy to defraud Medicare.[76] Regardless of how the fraud was carried out, or the quantitative value of the evidence implicating Paula in the fraud, Paula's role in the conspiracies, as alleged in the Superseding Indictment, is not so different or less culpable as compared to the other defendants such that a joint trial would result in prejudicial spillover.

Even if Paula is prejudiced by any spillover effect from a joint trial, spillover in and of itself does not justify severance under Rule 14(a). In a case in which prejudice is likely

---

[74] R. Doc. 551-1 at 13.
[75] R. Doc. 551-1 at 13–14.
[76] R. Doc. 574 at 9.

15

to result, the Court must consider whether the prejudice can be remedied with a carefully tailored jury instruction. In this case, the Court finds that such a jury instruction will remedy any spillover-effect prejudice. Even if a jury instruction were insufficient to remedy any prejudice to Paula, the Court finds the prejudice would not outweigh the well-accepted preference that defendants indicted together be tried together or the interest of judicial economy served by holding a joint trial.

Under Rule 14, a defendant bears a "heavy burden" to show prejudice sufficient to warrant severance.[77] Paula has not met her burden. In summary, the Court finds that severance under Rule 14(a) is not warranted in this case, and Paula's motion for severance must be denied.

II.   MOTION TO STRIKE PARAGRAPH 38 – RULE 7

Paula moves to strike Paragraph 38 from the Superseding Indictment. Paragraph 38 reads:

> From about January 1, 2009, through on or about October 1, 2014, Abide fraudulently billed Medicare approximately $22,578,454.75 for home health services Abide falsely claimed to have provided to eligible Medicare beneficiaries, and Medicare paid Abide approximately $30,052,264.82.[78]

Paula contends, "[w]hile this language might be applicable to the plea by Lisa Crinel, and may be relevant to some type of cross-examination setting, it is surplus language as to all doctors, and also to individual defendants such as Paula Jones."[79] According to Paula, "if there is such a '$30 million dollar' scheme to defraud, it would be the responsibility of the key government witness. The government has deleted Lisa Crinel from the Indictment,

---

[77] *United States v. Macias*, No. 4:08-CR-098-Y, 2009 WL 508719, at *1 (N.D. Tex. Mar. 2, 2009) (citing *United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir. 1979); *United States v. Bright*, 630 F.2d 804, 813 (5th Cir. 1980) ("[A] showing of *compelling prejudice* is required before a trial court's ruling [denying severance] under Rule 14 will be overturned.") (emphasis added)).
[78] R. Doc. 484 at 11.
[79] R. Doc. 551-1 at 14.

16

while at the same time leaving the language of the $30 million dollar fraud to taint the jury's initial perception of the remaining defendants."[80] For these reasons, Paula asks the Court to strike Paragraph 38 as prejudicial surplusage.[81]

In response, the Government argues Paragraph 38 of the Superseding Indictment should not be stricken because it "serves as a factual backdrop and part of the government's proof as to the harm that all of the defendants caused as a result of their role in the conspiracy to defraud Medicare."[82] The Government also contends Paragraph 38 is "relevant to the intent of the parties because it demonstrates how lucrative health care fraud is. Abide and the co-conspirators, including Paula Jones and the House Doctors, had a strong motive to commit fraud against Medicare because of the hefty payoff for Abide and the defendants."[83]

Federal Rule of Criminal Procedure 7(d) provides: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." Rule 7(d) provides "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."[84] "Surplusage, therefore, essentially refers to immaterial or irrelevant allegations tending to be prejudicial or inflammatory."[85]

"A district court retains discretion to strike surplusage from an indictment upon motion of the defendant under Rule 7(d)."[86] Overall, "[t]he level of proof required to strike

---

[80] R. Doc. 551-1 at 15.
[81] R. Doc. 551-1 at 14–16.
[82] R. Doc. 574 at 16.
[83] R. Doc. 574 at 16.
[84] FED. R. CRIM. P. 7(d), advisory committee's note. *See generally* 1 Charles A. Wright, *Federal Practice and Procedure* § 127 (1982 & Supp. 1992) (discussing Rule 7(d)).
[85] *United States v. Rush*, No. 92-218, 1992 WL 211621, at *1 (E.D. La. Aug. 19, 1992) (citing *United States v. Wylie*, 919 F.2d 969, 973 (5th Cir. 1990); *United States v. Hughes*, 766 F.2d 875, 879 (5th Cir 1985)).
[86] *United States v. Prejean*, 429 F. Supp. 2d 782, 796 (E.D. La. 2006).

surplusage from an indictment is 'exacting.'"[87] The Fifth Circuit has specifically held that surplusage should only be stricken from the indictment if it is "irrelevant, inflammatory and prejudicial."[88] A district court may strike language as surplusage on the ground that such material is unduly prejudicial if the language "serve[s] only to inflame the jury, confuse[s] the issues, and blur[s] the elements necessary for conviction."[89] "While the challenged language must be 'irrelevant, inflammatory, and prejudicial' in order to be stricken, if the allegation is admissible and relevant to the charge, then regardless of how prejudicial, the court should not strike the language."[90] Also, "surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."[91]

In this case, the Court finds that Paragraph 38 of the Superseding Indictment is relevant to the allegations in Counts 1 and 2 and, specifically, the intent of the Defendants, including Paula Jones, in carrying out the conspiracies charged therein. For that reason, the Court will not strike Paragraph 38. Counts 1 and 2 charge Paula, among others, with conspiracies to commit health care fraud and to pay and receive illegal health care kickbacks, respectively. It is the Government's position that the conspiracies were multi-million dollar schemes through which Paula and her co-defendants defrauded Medicare to the tune of roughly $30 million dollars.[92] Paragraph 38 of the Superseding Indictment

---

[87] *Id.* (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).
[88] *Bullock*, 451 F.2d at 888. *See also United States v. Alexander*, No. 06-60074-01, 2008 WL 2130185, at *2 (W.D. La. May 18, 2008); *Prejean*, 429 F. Supp. 2d at 796.
[89] *Prejean*, 429 F. Supp. 2d at 796 (citing *Bullock*, 451 F.2d at 888).
[90] *United States v. Reece*, No. 12-00146, 2013 WL 3327884, at *2 (W.D. La. July 1, 2013) (citing *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993); *United States v. Scarpa*, 913 F.2d 993, 1013 (5th Cir. 1990); *United States v. Edwards*, 72 F. Supp. 2d 664, 667 (M.D. La. 1990)). *See also United States v. Palazzo*, No. 05-0266, 2007 WL 3124697, at *10 (E.D. La. Oct. 24, 2007), *rev'd and remanded on other grounds*, 558 F.3d 400 (5th Cir. 2009). "[L]anguage which is inflammatory and prejudicial, but which is nevertheless relevant and admissible, should not be stricken." *Alexander*, 2008 WL 2130185, at *3.
[91] *Reece*, 2013 WL 3327884, at *2. (internal quotations and citations omitted).
[92] *See* R. Doc. 574 at 16–17.

provides an overview of the extent and magnitude of the conspiracies alleged in Counts 1 and 2 and evinces how lucrative those conspiracies actually were.

Paula directs the Court to Judge Fallon's decision in *United States v. Reed*, No. 15-100, 2016 WL 54903 (E.D. La. Jan. 5, 2016), in which the court struck language from the indictment under Rule 7(d). *Reed*, however, is distinguishable from this case. In *Reed*, the court concluded that certain paragraphs in the indictment were "prejudicial surplusage *unrelated to the offenses* with which Walter Reed [was] charged."[93] Specifically, the court found that, in effect, the paragraphs-at-issue alleged offenses that were not charged in the indictment and, for that reason, provided "extraneous information" that was not relevant to the charges actually alleged against Walter Reed.[94] The court concluded the paragraphs were "prejudicial and confusing as they create[d] the perception of additional charges and victims."[95] In this case, Paragraph 38 does not create such a perception, nor does it allege additional charges against Paula beyond what she is charged with in Counts 1 and 2. The language in Paragraph 38 is not extraneous information but is information relevant to the scope and magnitude of the conspiracies with which Paula is charged in Counts 1 and 2.

In summary, any prejudice to Paula that stems from Paragraph 38 does not warrant its striking. Paragraph 38 is relevant to issues that remain in dispute in this case. For that reason, Paula's motion to strike must be denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Paula's motion for severance pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a) and to strike Paragraph 38 from the Superseding Indictment pursuant to Rule 7 is **DENIED**.

---

[93] *Reed*, 2016 WL 54903, at *2 (emphasis added).
[94] *Id.*
[95] *Id.*

**New Orleans, Louisiana, this 18th day of July, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**